IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BECKY CHEDESTER, et al., | ) |
| | ) |
| Plaintiffs, | ) CIVIL ACTION 1:21-00447-KD-B |
| | ) |
| v. | ) |
| | ) |
| GEBRUEDER KNAUF | ) |
| VERWALTUNGSGESELLSCHAFT KG, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

# ORDER

This action is before the Court on Defendants' Motion for Summary Judgment (Docs. 49, 50, 51), Plaintiffs' Response (Doc. 52), and Defendants' Reply (Doc. 53). A hearing was held on September 6, 2023 (Doc. 64).

**I.    Background**

This case involves Chinese-manufactured drywall that was manufactured by Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd (collectively referenced as the "Knauf Defendants") and other unrelated entities. This case was filed in November 2014 as part of a class action styled Elizabeth Bennett et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al., No. 5:14-cv-02204 (N.D. Ala.). It is one of many cases filed against Defendants alleging that the materials used to make the drywall break down and release harmful sulfur compounds and other noxious gases which cause rapid sulfidation and result in damage to personal property, as well as personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm. (Doc. 1). According to Plaintiffs, Defendants acted recklessly, wantonly, and/or negligently in the

manufacture, export, import, distribution, delivery, supply, inspection, installation, marketing, and/or sale of the defective drywall. (Id.).

The Bennett class action was transferred in December 2014 to In re: Chinese-Manufactured Drywall Products Liability Litigation (MDL No. 2047), which is a multidistrict litigation ("MDL") action that was formed years earlier due to the volume of cases involving Chinese drywall and the commonality of issues in those cases. After the close of discovery, the MDL court remanded the Bennett class action to the Northern District of Alabama. (Bennet, No. 5:14-cv-02204, Doc. 7). After attempts to mediate the Bennett case proved unsuccessful, the Northern District of Alabama severed and transferred the claims of the Plaintiffs in this action to the undersigned.[1] (Bennet, No. 5:14-cv-02204, Doc. 26).

## II.  The Multidistrict Litigation

A Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, consolidated all federal cases involving Chinese-manufactured drywall for pretrial proceedings in MDL 09-2047 before District Judge Fallon in the Eastern District of Louisiana, who managed the MDL for the ensuing ten years. See In re Chinese-Manufactured Drywall Prod. Liab. Litig., No. MDL 2047, 2021 WL 50455, at *1 (U.S. Jud. Pan. Mult. Lit. Jan. 5, 2021).

As stated by Judge Fallon:[2]

> From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and the East Coast. Sometime after the installation of the Chinese drywall,

---

[1] Plaintiffs' property containing the drywall is located in the Southern District of Alabama.
[2] The conditional remand order issued by the United States Judicial Panel on MDL incorporates Judge Fallon's Suggestion of Remand, Opinion and Order, which contains a concise background summary of the MDL. (Doc. 7).

homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), aff'd, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation…

…The Knauf [Defendants] are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts. The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in Hernandez v. Knauf Gips KG, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in Hernandez, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in Hernandez. The Knauf pilot remediation program is now completed and more than 2,200 homes containing KPT Chinese drywall have been remediated using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of

the Knauf Settlement is approximately $1.1 billion. Thereafter, additional claims were filed against Knauf and others, as in the instant case.

The instant suggestion of remand involves claims asserted by Plaintiffs who did not participate in the Knauf settlement. After managing this MDL for ten years, the Court concludes that the purpose behind consolidating these related actions in this Court have now been served. The Court has addressed numerous discovery disputes, dispositive motions, and other pretrial issues involving facts and legal questions common to the various cases in this MDL proceeding. No further pretrial motions raising common questions are pending in these cases, and remand to the transferor court appears to be in the interest of judicial efficiency and fairness to the parties.

This suggestion of remand relates to *Elizabeth Bennett, et al. v. Gebr. KnaufVerwaltungsgesellschaft, KG, et al.*, No. 14-2722 ("Bennett Complaint"). On November 13, 2014, Elizabeth Bennett filed suit in the Northern District of Alabama on her own behalf and on behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the In re Chinese Manufactured Drywall Liability Litigation, MDL 09-2047, currently pending before this Court. Upon learning that twenty-three Bennett plaintiffs planned to appeal the Court's Orders and Reasons granting summary judgment against them, the Court severed these cases so as not to delay the instant suggestion of remand. R. Doc. 22967.

Given the extensive motions practice that has occurred in this MDL, the Court finds it appropriate to transfer the remaining Bennett cases to the transferor court. See Attachment A. This Court recognizes that parties may still need to conduct some discovery before trial. Nevertheless, this discovery is case-specific, so it should be supervised by the transferor court. This Court has worked diligently for the past ten years, and transferor court and parties are now equipped with abundant resources to steer these cases to a fair and just conclusion. In particular, this Court has denied class certification of the purported Bennett class action. R. Docs. 22528. At this point in the litigation, centralizing these cases has minimal benefit to parties; local courts are well-suited to evaluate the losses incurred by the Plaintiffs.

(Doc. 7, Conditional Order on Remand).

### III.  Relevant Facts[3]

Plaintiffs Booker and Terri Lee (the "Lees") had Chinese drywall installed in their home (the "Lee Residence") in 2007. Plaintiffs Becky and Michael Chedester (the "Chedesters") purchased a home (the "Chedester Residence") in Chunchula, Alabama in August 2007. (Doc. 50 at 4). At the time of purchase, Chinese drywall had already been installed in the Chedester Residence. (Doc. 50 at 9).

### IV.  Standard of Review on Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

> *(c) Procedures*
> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

---

[3] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

## V.     Analyses[4]

Plaintiffs' objection to the alleged "untimely filing of Defendants' Motion" for Summary Judgment (Doc. 52), is **OVERRULED**. (Doc. 52 at 2). The MDL court expressly acknowledged that the trial courts "will be in a better position to consider the facts of each case and the nuances of state law when ruling on [motions for summary judgment]" and therefore denied the Bennet Plaintiffs' Motion for Summary Judgment **without** prejudice. (MDL No. 2047, Doc. 22944 at 2). Additionally, this Court expressly set a January 27, 2023, deadline for filing motions for

---

[4] Unless indicated otherwise, the Court will analyze the Lees' and Chedesters' claims together.

summary judgment and the present motion was filed on said date. Accordingly, Defendants' Motion for Summary Judgment is properly before the undersigned.

### a. Negligence and Negligent Discharge of a Corrossive Substance (Counts I and VI)

Plaintiffs assert both negligence (Count I) and negligent discharge of a corrosive substance claims (Count VI) in the complaint. (Doc. 47 at 8, 13). The Court has not identified, and Plaintiffs have failed to provide, any authority suggesting "negligent discharge of a corrosive substance" is a stand alone tort under Alabama law. The claims appear to be duplicative of one another. Therefore, Plaintiffs' negligent discharge of a corrosive substance claim is analyzed under the same standard as their negligence claim, and comparing their respective sections within the Amended Complaint it is clear that Count VI and Count I are premised on the same factual allegations. Accordingly, it is **ORDERED** that **Count VI is merged with Count I**. See Wultz v. Islamic Republic of Iran, 755 F. Supp. 2d 1, 81 (D.D.C. 2010) ("Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available. McGee v. District of Columbia, 646 F.Supp.2d 115, 121–22 (D.D.C. 2009). As a matter of judicial economy, courts should dismiss claims that are duplicative of other claims. See id. at 121."); see e.g., Appleby v. Knauf Gips KG, No. 22-CIV-61411-RAR, 2023 WL 3844770, at *2 (S.D. Fla. June 5, 2023).

Under Alabama law, a plaintiff must prove the following elements to make a prima facie showing of negligence: "'(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. *Albert v. Hsu,* 602 So.2d 895, 897 (Ala.1992).'" Buckentin v. SunTrust Mortg. Corp., 928 F. Supp. 2d 1273, 1289 (N.D. Ala. 2013).

Here, Defendants concede that the Lee's negligence claim is due to survive summary judgment. (Doc. 51 at 6). Accordingly, **the Lee's negligence claim survives** summary judgment

7

as a matter of law.

Defendants argue that the Chedesters are unable to recover under a theory of negligence since they purchased the Chedester Residence with Chinese drywall previously installed. In support, Defendants cite to Boackle v. Bedwell Construction Co., Inc., 770 So. 2d 1076 (Ala. 2000), and Keck v. Dryvit Systems, Inc., 830 So. 2d 1 (Ala. 2002). (Doc. 51 at 8-9).

The Court agrees with Defendants: the Chedesters' negligence claim fails. First, the Chedesters were not in privity with Defendants. Second, Plaintiffs have failed to show that Defendants owed the Chedesters a duty. See Keck v. Dryvit Sys., Inc., 830 So. 2d 1, 9 (Ala. 2002):

> The Kecks [subsequent purchasers of the home] also contend that the trial court erred in applying the doctrines of *caveat emptor* and contractual privity, thereby barring their negligence claims. We disagree. The lack of privity between the Kecks and the Dryvit defendants forecloses such claims because the Kecks are not the initial purchasers of the house.
>
> Even if the law of privity were inapplicable to this case, the Kecks' negligence claims would nevertheless fail, because the Kecks have failed to prove that the Dryvit defendants owed them a duty.

Keck, 830 So.2d at 9 (internal citations omitted).

Accordingly, under Alabama law, **the Chedesters** have failed to carry their burden and their **negligence claim fails as a matter of law.**

### b. Negligence Per Se (Count II) and Strict Liability (Count III)

Plaintiffs assert negligence *per se* (Count II) and Strict Liability (Count III) claims in the complaint. (Doc. 47 at 9-10). First, the Court finds that Plaintiffs' negligence *per se* and strict liability claims are both subsumed by the AEMLD. See, Atkins v. Am. Motors Corp., 335 So. 2d 134 (Ala. 1976) (Discussing the interplay between negligence *per se*, strict liability, and the AEMLD).

8

The Eleventh Circuit has characterized the AEMLD as a " 'fault-based defective product theory,' [ ] comparable to a defective product action grounded in strict liability" but "retain[ing] the negligence-based notion of 'fault' on the part of the manufacturer, supplier, or retailer." Bodie v. Purdue Pharma Co., et al., 236 Fed. Appx. 511, 518 n. 9 (11th Cir. 2007) (per curiam).

The Supreme Court of Alabama set out the elements of the AEMLD in Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976). A plaintiff must show the following to establish liability under the AEMLD:

> "(1) [that] he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
>
> (a)  the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold.
>
> (2) Having established the above elements, the plaintiff has proved a prima facie case although
>
> (a) the seller had exercised all possible care in the preparation and sale of his product, and
>
> (b) the user or consumer had not bought the product from, or entered into any contractual relation with, the seller.

Atkins, 335 So.2d at 141.

> Stated differently, a defendant will be liable under the AEMLD if it manufactures, designs, or sells an unreasonably dangerous product that reaches the consumer substantially unaltered and, because of its unreasonably dangerous condition, injures the consumer when put to its intended use. Under the AEMLD, therefore, a defective product is one that is unreasonably dangerous, i.e., one that is not fit for its intended purpose or that does not meet the reasonable expectations of the ordinary consumer. *Casrell v. Altec Industries, Inc.,* 335 So.2d 128, 133 (Ala.1976); *Entrekin v. Atlantic Richfield Co.,* 519 So.2d 447 (Ala.1987).

Beam v. Tramco, Inc., 655 So. 2d 979, 981 (Ala. 1995).

The Alabama Supreme Court discussed the test for determing whether an item incorporated into real property may be considered a "product" under the AEMLD in Keck v. Dryvit Systems, Inc., 830 So.2d 1 (Ala. 2002):

> …we take this opportunity to define with greater clarity when an item attached to realty may be considered a "product" for purposes of the AEMLD… The question whether an item attached to realty may be considered a product for purposes of the AEMLD must be based on the underlying policies of product-liability law in Alabama, not on the law of fixtures. When considering whether an item attached to realty constitutes a "product" for purposes of the AEMLD, we must consider the overall function and life span of the item.
>
> The owner of a house or of any building should reasonably expect that many components will have the same useful life as the house or building itself and will not need to be replaced over the life of the building. Such components include, by way of example, an exterior brick wall, a staircase, or a fireplace. There are also certain components of a house or a building the purchaser reasonably expects to wear out and to require replacement in the course of normal and ordinary usage, such as roof shingles, a dishwasher, a furnace, or a hot-water heater. Whether an item that is incorporated into real property may be considered a "product" for purposes of the AEMLD is determined by whether the item is a part of the structural integrity of the house or building that is reasonably expected to last for the useful life of the house or building. If it is, then the item cannot be considered a "product" for purposes of the AEMLD. However, if the item is attached or incorporated into real property and, yet its very function and nature clearly makes it an item that one would reasonably expect to repair or to replace during the useful life of the realty, the item may be considered a "product" for purposes of the AEMLD. For instance, although paint, when applied to the structure of a wall, becomes incorporated into the surface of the wall, paint is a structural improvement that does not have the same useful life as the wall itself or the building to which the wall is attached; one would expect to have to repaint a wall to maintain the quality of the first application. Therefore, paint would be considered a product for purposes of the AEMLD.

Keck, 830 So.2d at 6.

The Court finds that the drywall is not a "product" for purposes of the AEMLD. First, the Court agrees with the reasoning set out in In re Chinese-Manufactured Drywall Prod. Liab. Litig., No. 09-MD-2047, 2022 WL 17684805, at *14-15 (E.D. La. Nov. 28, 2022):

> Plaintiffs' counsel placed all his emphasis on the verbiage "part of the structural integrity of the house or building" to argue that, because sheetrock is not a "load-bearing" component, it must be a "product" covered by the AEMLD. But this conclusion ignores

10

> both the remaining language of the case, including the above-quoted language, and, more importantly, the actual result in the *Keck* case.
>
> The central feature of the *Keck* court's analysis was not whether the product in question was "load bearing," but whether it would be "reasonably expected to last for the useful life of the house or building." *Id.* Indeed, the last sentence quoted by Plaintiffs makes this abundantly clear: "if the item is attached or incorporated into real property and, yet its very function and nature clearly makes it an item that one would reasonably expect to repair or to replace during the useful life of the realty, the item may be considered a 'product' for purposes of the AEMLD." *Id.*
>
> The Court's conclusion is reinforced by the result in the case, the *Keck* court found that the EIFS could not be considered a "product" under the AEMLD, reasoning that
>
>> [t]he EIFS is a multilayered exterior wall system that actually composes the exterior walls of a building. Once applied, the EIFS becomes a part of the structural integrity of the building and actually is the exterior wall of the building. By virtue of the very function of the EIFS as an exterior wall system, the EIFS could not be a structural component of a building that one might expect to replace after normal wear and tear. A stucco exterior wall is the equivalent of a brick wall; it is a part of the structural integrity of a house – a homeowner expects it to be weather resistant and to endure for the entire useful life of the house. Therefore, the EIFS cannot be considered a product for purposes of the AEMLD.
>
> *Id.* at 7. In other words, the Styrofoam insulation at issue was, in fact, a "structural component" outside the reach of the AEMLD because (1) it was incorporated into the exterior wall and (2) it was expected to endure for the entire useful life of the house. *Id.* This is what the Court meant when it used the term "structural integrity." It did not mean "load-bearing," as counsel for Plaintiffs insists.
>
> And so it must be with sheetrock or drywall, which is attached to the interior walls of a home, thereby becoming incorporated into those walls. And it cannot be seriously argued by anyone that sheetrock or drywall is a product that a homeowner would "expect to repair or replace during the useful life of the realty." *Id.* at 6.

In re Chinese-Manufactured Drywall Prod. Liab. Litig., 2022 WL 17684805, at *14-15.

Second, the Court finds that: 1) drywall, which is attached to the interior walls of a building, becomes incorporated into those walls, which is part of the structural integrity of the building; and 2) drywall is expected to have the same useful life as the building to which the wall is attached. See Keck, 830 So.2d at 6-7 (Finding that Styrofoam insulation is not a "product" for purposes of the AEMLD because 1) "[o]nce applied, the [Styrofoam insulation] becomes a part

11

of the structural integrity of the building…" and, 2) Styrofoam insulation is not "a structural component of a building that one might expect to replace after normal wear and tear.") Accordingly, the drywall is not a "product" for purposes of the AEMLD and Plaintiffs' claim fails as a matter of law. See Keck, 830 So.2d.

    c.  **Breach of Express and/or Implied Warranty (Count IV)**

The Plaintiffs do not cite the Court to an express warranty. Consequently, Plaintiffs' express warranty claim fails as a matter of law. See, e.g., Wait v. Roundtree Mobile, LLC, No. 15-285, 2015 WL 6964668, at *3 (S.D. Ala. Nov. 10, 2015) ("The first logical step in proving a breach of express warranty is showing the existence of an express warranty.").

Next, Defendants argue that Plaintiffs' implied warranty claim is due to be dismissed because the drywal is not a "good" for purposes of an implied warranty claim under Alabama law. Alabama Code § 7-2-31 applies to the implied warranty for merchantability and states: "[u]nless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Alabama Code § 7-2-315 applies to the implied warranty of fitness for a particular purposes and states: "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose."

To prove a breach of the implied warranty of fitness for a particular purpose claim, "the Plaintiffs must prove: (1) the existence of the implied warranty; (2) breach of the implied warranty; and (3) damages proximately resulting from that breach. Barrington Corp. v. Patrick

12

Lumber Co., Inc., 447 So.2d 785, 787 (Ala.Civ.App.1984)." Chase v. Kawasaki Motors Corp., U.S.A., 140 F. Supp. 2d 1280, 1289 (M.D. Ala. 2001).[5]

When a "good" is attached to realty it ceases to be a "good" for purposes of the UCC if the good is incapable of severance without material harm to the realty. Keck, 830 So.2d at 8 ("The test for determining whether an attachment to realty is a good under the UCC is whether the 'thing' attached to the realty is capable of severance without material harm to the realty."). The question then is whether the drywall can be severed without material harm to the home. Currently there is insufficient briefing for a determination to be made as a matter of law. Accordingly, summary judgment is **denied** as to the implied warranty claim.

### d. Private Nuisance (Count V)

Alabama law defines a nuisance as "anything that works hurt, inconvenience, or damage to another. The fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man." Ala. Code. 1975 § 6-5-120. "Nuisances are either public or private. A public nuisance is one which

---

[5] Defendants agree that privity is not required to assert a claim of implied warranty for damages other than economic loss. See, e.g., Ballard v. Gen. Motors, LLC, 572 F. Supp. 3d 1154, 1159–60 (M.D. Ala. 2021):

> Alabama's law on privity of contract distinguishes implied warranty claims seeking recovery of economic injuries from those seeking recovery for personal injuries. In decisions decided both before and after *Ex parte General Motors Corp.*, Alabama appellate courts have held that privity of contract is required for implied warranty claims where the plaintiff seeks relief for only economic injuries; however, Alabama appellate courts have held that, by statute, privity of contract is not required where the plaintiff seeks relief for personal injuries.

Id.

Defendants also concede that the drywall is not merchantable and therefore not fit for its intended purpose.

13

damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state. A private nuisance gives a right of action to the person injured." Ala. Code § 6-5-121.

"The Alabama Supreme Court has held that this statutory definition of nuisance is 'declaratory of the common law and does not supersede it as to the other conditions and circumstances constituting a nuisance under common law.'" Woods v. United States Steel Corp., No. 2:17-CV-00883-RDP, 2018 WL 6067502, at *6 (N.D. Ala. Nov. 20, 2018) (citing Lauderdale Cty. Bd. of Ed. v. Alexander, 110 So. 2d 911, 915 (Ala. 1959). An important "common-law requirement of any nuisance claim is that the plaintiff must prove 'the elements of legal duty and causal relation between the conduct or activity complained of and the hurt, inconvenience, or damage sued for.'" Woods at *6 (N.D. Ala. Nov. 20, 2018) (citing Tipler v. McKenzie Tank Lines, 547 So. 2d 438, 440 (Ala. 1989); see also Chambers v. Summerville United Methodist Church, Inc., 675 So.2d 1315, 1316 (Ala. Civ. App. 1996) (The party claiming a nuisance "must ... prove the tort elements of duty and causation in order to make a prima facie case of nuisance.") (quoting Commonwealth Savingshares Corp. v. Fayetteville Holdings, LLC, 250 So. 3d 592, 601 (Ala. Civ. App. 2017)). The Court must consider the particular facts of each case to determine whether the party charged with creating and maintaining a nuisance has engaged in a course of conduct, or has permitted to exist a set of circumstances, that, in its natural and foreseeable consequences, proximately caused the hurt, inconvenience, or damage complained about." Tipler, 547 So. 2d at 440-41. "Even assuming that the determination of causation is properly a factual issue for the jury, there yet remains the threshold issue of legal

14

duty." Tipler, 547 So. 2d at 441.

In sum, a nuisance claim requires a Plaintiff to prove four elements: "(1) activities that worked hurt, inconvenience, or damage to the complaining party, (2) breach of a legal duty owed, (3) causal relation between the conduct or activity complained of and the hurt, inconvenience, or damage sued for, and (4) damages." LaBauve v. Olin Corp., 231 F.R.D. 632, 673 (S.D. Ala. 2005) (citing Tipler, 547 So.2d 440).

As discussed at the September 6, 2023 Hearing, the briefing is currently inadequate for this Court to determine as a matter of law that nuisance is not a viable claim. Accordingly, summary judgment as to nuisance is **denied**.

### e. Unjust Enrichment (Count VII)

"The doctrine of unjust enrichment is an old *equitable* remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." Scrushy v. Tucker, 955 So. 2d 988, 1011 (Ala. 2006) (internal quotations and citations omitted). "To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit; (2) provided by another; (3) who has a reasonable expectation of compensation. Portofino Seaport Vill., LLC v. Welch, 4 So.3d 1095 (Ala. 2008)." Retaining a benefit is unjust if:

> (1) the donor of the benefit ... acted under a mistake of fact or in misreliance on a right or duty, or (2) **the recipient of the benefit ... engaged in some unconscionable conduct**, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched

Mantiply v. Mantiply, 951 So. 2d 638, 654–55 (Ala. 2006) (internal quotations and citations omitted) (emphasis added).

Plaintiffs have failed to provide sufficient evidence from which a jury could find that Defendants engaged in unconscionable conduct. Plaintiffs argue that unconscionable conduct of

15

Defendants is shown through Exhibit C, a "Confidential Settlement agreement and Release", which Plaintiffs argue is evidence of concealment. (Doc. 52-3). Exhibit C is not sufficient evidence that Defendants intentionally concealed anything. Rather, Exhibit C is evidence that 1) Defendants had a dispute, 2) Defendants settled the dispute, and 3) Plaintiffs are not allowed to discuss the settlement. (Doc. 52-3). Consequently, Plaintiffs' unjust enrichment claim fails as a matter of law.

    f.   **Violation of Alabama Deceptive Trade Practices (Count VIII)**

Plaintiffs' concede that their Alabama Deceptive Trade Practices claim is due to be dismissed. ( Doc. 52 at 19). Accordingly, Plaintiffs' Alabama Deceptive Trade Practices claim fails as a matter of law.

    g.   **Applicability of Limitations on Plaintiffs' Recovery: Economic Loss Rule and Diminution in Value**

Defendants argue that Plaintiffs' recovery is limited by the Economic Loss Rule. Yet, the MDL Court has specifically held that the Economic Loss Rule <u>does not</u> apply in Alabama. <u>See In re Chinese Manufactured Drywall Prod. Liab. Litig.</u>, 680 F. Supp. 2d 780, 790 (E.D. La. 2010) ("the ELR targets products which fail to meet a plaintiff's economic expectations, as distinguished from products which pose an unreasonable risk of harm to a plaintiff's property and health, but do not fail to meet their intended purpose. **For this latter group, the ELR has no relevance**.") (emphasis added). And, the Court agrees with this analyses. Accordingly, **Plaintiffs' recovery is not limited by the Economic Loss Rule**.

Next, Defendants argue that Plaintiffs' recovery is limited to the diminution in value of the real estate. Plaintiffs' disagree with this assertion. However, the MDL has addressed this argument on more than one occasion:

16

> Under Alabama law, when the cost to remediate real property exceeds the diminution in value of that property, the proper measure for alleged damage is the diminution in value of that property. *See Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792 (Ala. 2007).; *see also Dialysis Clinic, Inc. v. City of Dothan*, No. 1:10-CV-1051-WKW [WO], 2012 U.S. Dist. LEXIS 156351, at *7-11, 2012 WL 5381650 (M.D. Ala. Nov. 1, 2012)….
>
> … Plaintiffs and their counsel spent the better part of a year trying to convince this Court to apply some other – in fact, any other – rule so that they could ultimately recover in this case something close to their estimated repair/remediation costs. The Court gave them multiple opportunities to (1) make the case that their measure of damages was something other than diminution in the value of their homes, and (2) failing that endeavor, marshal the evidence necessary to demonstrate the value of such diminution. The Court will detail this chaotic procedural history below…

In re Chinese-Manufactured Drywall Prod. Liab. Litig., 2022 WL 17684805, at *3.

Additionally, citing this Court, the MDL pointed out:

> Evaluating the admissibility of repair costs in a property-damage case, the District Court for the Southern District of Alabama found that, while "the appropriate measure of direct, compensatory damages to real property generally is the diminution in the value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof," it is also true that "evidence of repair costs remains admissible to show diminution in value for injury to real estate, but diminution in value remains the measure of damages even when remediation costs exceed that diminution in value." *Kerns v. Pro-Foam of South Ala., Inc.*, 572, F. Supp. 2d 1303, 1307 (S.D. Ala. 2007) (citing *Poffenbarger* 972 So. 2d at 800-01).

In re Chinese-Manufactured Drywall Prod. Liab. Litig., 2022 WL 17684805, at *3.

Thus, the Court agrees with the MDL that **Plaintiffs' damages are limited to the diminution in value of their property, but costs of remediation are admissible to show such**.

### h. Punitive Damages

Under Alabama law, "[p]unitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Ala. Code § 6-11-20. As discussed at the September 6, 2023 Hearing, Plaintiffs agree that

punitive damages are not available for the Chedesters' nuisance or implied warranty claims.

The Lees allege that Defendants' conduct was wanton. However, there is insufficient evidence of wantonness presented by Plaintiffs in response to Defendants' motion for summary judgment. The Plaintiffs are relying on a prior confidential settlement, discussed *supra*, as the sole basis for for the wantonness claim. (Doc. 52 at 20-21). For the same reasons the confidential settlement does not provide sufficient evidence of unconscionable conduct, it is insufficient for a reasonable jury to find wantoness. See, e.g., Ala. Code § 6-11-20(3) (Defining "wantonness" as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.").

## VI. Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment (Doc. 49) is **GRANTED in part and DENIED in part as set forth below:**

1. As to the **Chedesters**, Defendants' Motion is **GRANTED** as to **Counts I-III and VI-VIII** and **DENIED** as to **Counts IV-V**.

2. As to the **Lees**, Defendants' Motion is **GRANTED** as to **Counts II-III and VII-VIII** and **DENIED** as to **Counts I** and **IV-VI**.

**DONE** and **ORDERED** this the 7th day of **September 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**