IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BECKY CHEDESTER, et al.,** ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION 1:21-00447-KD-B |
| ) | |
| v. ) | |
| ) | |
| **GEBRUEDER KNAUF** ) | |
| **VERWALTUNGSGESELLSCHAFT KG,** ) | |
| **et al.,** ) | |
| ) | |
| Defendants. ) | |

# ORDER

This matter is before the court on Plaintiffs Booker Lee, Terri Lee, and Becky Chedester's ("Plaintiffs") and Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd.'s ("Knauf Defendants" or "Defendants") supplemental briefs discussing: (a) whether the drywall at issue is a "good" under the UCC; and (b) caselaw analyzing nuisance in a similar context. (Doc. 79; Doc. 80). In January 2023, Defendants moved for summary judgment, seeking dismissal of all claims asserted against them other than the Lees' negligence claims. (Docs. 49, 50, 51). On September 7, this Court granted in part and denied in part Defendants' Motion for Summary Judgment. (Doc. 77). This Court denied summary judgment as to the Lees' and Becky Chedester's breach of implied warranty and private nuisance claims while ordering further briefing on the issues. (Id.). After considering both Defendants', (Doc. 79), and Plaintiffs', (Doc. 80), supplemental briefs, and Defendants', (Doc. 84), and Plaintiffs', (Doc. 85), responses, the Court **GRANTS summary judgment for Defendants as to Chedester's breach**

**of implied warranty and private nuisance claims** under Counts IV and V of the Second Amended Complaint, (Doc. 83).[1]

I.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). After giving notice and a reasonable time to respond, the court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). A district court may enter summary judgment sua sponte if the parties are given adequate notice that they must present all of their evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); Flood v. Young Woman's Christian Ass'n of Brunswick, Inc., 398 F.3d 1261, 1267 (11th Cir. 2005). Adequate notice exists when an opposing party previously moved for summary judgment on that claim and the nonmovant is given an opportunity to file briefing and any new evidence before the court. Flood, 398 F.3d at 1267.

---

[1] Defendants claim that "as a preliminary matter, it is undisputed that KPT was the manufacturer and seller of KPT drywall, not Gips. Therefore, both the nuisance and implied warranty claims should be dismissed with prejudice because it was not the manufacturer or seller of KPT drywall." (Doc. 79 at 1; see also Doc. 84 at 1, n.1) ("Plaintiffs' claim for breach of implied warranty against Defendant Gips must fail because Gips did not manufacture, market, sell, or distribute KPT drywall."). As discussed in the Final Pretrial Conference, because Defendants did not raise this issue in their original Motion for Summary Judgment, (Docs. 49, 50, 51), it is not addressed in the Court's order on summary judgment.

## II. ANALYSIS

### A. Breach of Implied Warranty (Count IV)

Under Article 2 of the UCC, "'Goods' means all things . . . which are movable at the time of identification to the contract for sale . . . . 'Goods' also includes . . . other identified things attached to realty as described in the section on goods to be severed from realty." Ala. Code § 7-2-105(1) (1975). Official comments to § 7-2-105 provide, "This Article in including within its scope 'things attached to realty' adds the further test that they must be capable of severance without material harm thereto. As between the parties any identified things which fall within that definition become 'goods' upon the making of the contract for sale." § 7-2-105 cmt. 1 (1975). Crucially, Article 2 provides that, unless excluded or modified, an implied warranty of merchantability arises in a contract for the sale of goods if the seller is a merchant with respect to goods of that kind. § 7-2-314. Further, an implied warranty of fitness for a particular purpose will arise in a contract for the sale of goods if the seller has reason to know any particular purpose for which the goods are required at the time of contracting, the buyer is relying on the seller's skill or judgment to select or furnish the goods, and the warranty has not been excluded or modified. § 7-2-315.

Defendants cite, (Doc. 51 at 13-14; Doc. 79 at 2), and Plaintiffs distinguish, (Doc. 80 at 2-3), Keck v. Dryvit Sys., Inc., 830 So. 2d 1 (Ala. 2002), the only on-point decision of the Alabama Supreme Court.  In Keck, the Court considered whether an exterior insulation finishing system ("EIFS") manufactured and installed by the defendants constituted a "good" under UCC Article 2. The EIFS was a "multilayered exterior wall system consisting of Styrofoam insulation board glued to the exterior wooden substrate previously affixed during construction of the house, a base coat . . . and a finish coat . . . ." Id. at 3. Referencing the statutory requirement for "things

attached to realty," the court could not say that the EIFS, a multilayered system that composed the exterior wall of the plaintiffs' house, could be detached from the house without causing it significant harm. Id. at 8. It explained that the EIFS was attached to the underlying sheathing of the home during its construction; that, once incorporated, the EIFS loses its distinct characteristic as a "good" and becomes an integral part of a home's structure; and that removing the EIFS from the plaintiffs' home "would damage the underlying sheathing of the house and the overall structural integrity of the house, leaving the house exposed to the elements." Id. Therefore, because removal of the EIFS would unquestionably result in material harm to the plaintiffs' house, the EIFS could not be considered a good under the UCC. Id. at 8-9. The court further quoted with approval a Virginia circuit court decision involving the same product, which held,

> The EIFS at issue in this case was a good at one time, but once it was incorporated into the walls of the units it ceased to be a "good" in that it lost any distinctive characteristic it once had. To hold otherwise would be to hold that any "building component" used in the construction of any building contains a manufacturer's warranty applicable to remote plaintiffs simply because it was a good at some time.

Id. at 9 (emphasis included) (quoting BayPoint Condominium Ass'n, Inc. v. Dryvit Sys., No. CL99-475, 2001 WL 792693, at *7 (Va. Cir. Ct. Apr. 3, 2001)).

Here, it is undisputed that the Chedesters purchased their home in 2007, with the drywall at issue installed in the property during the prior year, before the Chedesters acquired the home. (Doc. 52-1) ("Chedester alleges that the drywall at issue was installed in her property in 2006, before she acquired ownership of the property."). Because the Chedesters were not the original homeowners, the relevant contract for sale, see § 7-2-105 cmt. 1, is not the drywall purchase contract but the Chedesters' August 2007 real estate contract for the purchase of the property on West Brighton Drive, (Doc. 52-1). Accordingly, whether this Court classifies drywall as a "good" as between Plaintiff Chedester and Defendants turns on whether, applying the Alabama Supreme

Court's holding in Keck, 830 So. 2d 1, it was "capable of severance [from the Chedesters' home] without material harm thereto," § 7-2-105 cmt. 1, at the time the Chedesters acquired the West Brighton Drive property in August 2007.

Plaintiffs distinguish the drywall here, "a good that is hung, without alteration or combination with other goods, as a finish to the interior walls of a home," from the stucco wall systems in Keck and Hanover Insurance Co. v. BASF Corp., No. 28-CV-1418-TMP, 2019 WL 220240, at *5-6 (N.D. Ala. Jan. 16, 2019). (Doc. 80 at 2-5) (arguing that crucial to Hanover's holding that the stucco wall system was not a good was that its removal would leave the building exposed to the elements, unlike drywall, which is installed as a finish to the interior walls of a home). Plaintiffs argue that MDL-2047's remediation program, a "court-approved protocol" implemented "thousands" of times following the 2013 settlement of filed claims against the Knauf entities that is to occur "over the course of multiple months," proves that the drywall is capable of being removed without material harm to the realty. (Doc. 80 at 5; see Doc. 80-2). But even if the Court were to somehow conclude that a voluminous remediation protocol that Plaintiffs concede impacts the realty for multiple months, (Doc. 80; see Doc. 80-2), means that the drywall at issue is capable of severance without materially harming the realty, § 7-2-105 cmt. 1, Plaintiffs overlook the aspect of BayPoint Condominium that Keck emphasizes in its holding. 830 So. 2d at 9 ("The EIFS at issue in this case was a good at one time, but once it was incorporated into the walls of the units it ceased to be a 'good' in that it lost any distinctive characteristic it once had.") (quoting BayPoint Condominium, 2001 WL 792693, at *7). Here, similarly, at the time the Chedesters acquired their home, the drywall at issue was incorporated into their residence's walls, losing any distinctive characteristic it may have had pre-incorporation. Keck goes on, "To hold otherwise would be to hold that any 'building component'

used in the construction of any building contains a manufacturer's warranty applicable to remote plaintiffs because it was a good at some time." 830 So. 2d at 9 (quoting Baypoint Condominium, 2001 WL 792693, at *7). It undisputed that Plaintiff Chedester, as a subsequent purchaser, is such a remote plaintiff. Accordingly, the Court **GRANTS summary judgment for Defendants on Plaintiff Chedester's breach of implied warranty claim** under Count IV of the Second Amended Complaint, (Doc. 83), because the drywall was not a good as to Chedester.

Also in support, Plaintiffs cite, (Doc. 80 at 5-6), Parker v. Exterior Restorations, Inc., No. 21-CV-0425, 2023 WL 375359, at *1 (S.D. Ala. Jan. 24, 2023), in which the Parkers and a custom builder constructing a new home for the Parkers, sued a contractor for installing and manufacturer for selling an allegedly defective stucco exterior applied to the new home. The Parkers and the Builder pointed to two stucco purchase contracts – one between the contractor and the manufacturer and another between the builder and the manufacturer – and argued that the stucco products were identified under those contracts no later than upon delivery to the Parkers' home, at which point, unlike in Keck, they were necessarily movable and not attached to real property. Parker, 2023 WL 375359, at *5 (citing Doc. 196 at 12-14); see § 7-2-105(1). The Parkers and the Builder argued that the stucco thus began and remained a "good" vis-à-vis them. This Court in Parker refused to grant the defendants' motion to dismiss with respect to the implied warranty claims, holding,

> On the other hand, neither did the Keck court say that an implied warranty, once it arises in favor of the purchaser of a good (as Keck effectively concedes occurred with respect to the EIFS prior to its application), can simply wink out of existence as to that purchaser, much less that the very act of *using* the good (which is generally the point of acquiring it) eliminates the warranty as to the purchaser, rendering the warranty chimerical.

2023 WL 375359, at *5 (emphasis included).

Unlike in Parker, the Lees do not point to a relevant drywall purchase contract with them, a custom builder, or a contractor as buyer. (See Doc. 52-1) ("Plaintiff[s] Terri and Booker Lee do not know the identity of the distributor [of] the defective Knauf drywall was installed in their home."). It is entirely unclear to the Court from Exhibit 1 to Plaintiffs' Supplemental Brief, (Doc. 80-1), what relationship, if any, the Lees have to "Rothchilt International Limited," the buyer listed in the purported drywall purchase contract. Absent evidence at trial that the drywall "began as a good vis-à-vis" the Lees, Parker, 2023 WL 375359, at *5, rather than the Lees purchasing their home with the drywall already incorporated, the Court will be required to apply the plain language of Keck and dismiss the Lees' breach of implied warranty claim at the close of plaintiffs case. However, given the lack of clarity in the record, the Court will not at this time reconsider summary judgment for Defendants on the Lees' breach of implied warranty claim under Count IV of the Second Amended Complaint, (Doc. 83).

**B. Private Nuisance (Count V)**

Under the Code of Alabama,

> A "nuisance" is anything that works hurt, inconvenience, or damage to another. The fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man.

Ala. Code § 6-5-120 (1975). In Alabama, nuisance claims require proof of: (1) activities that worked hurt, inconvenience, or damage to the plaintiff; (2) breach of a legal duty owed; (3) causal relation between the conduct or activity complained of and the hurt, inconvenience, or damage sued for; and (4) damages. LaBauve v. Olin Corp., 231 F.R.D. 632, 673 (S.D. Ala. 2005); Tipler v. McKenzie Tank Lines, 547 So. 2d 438, 440 (Ala. 1989). Nuisances are either public or private; while a public nuisance is "one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals," a private nuisance is

"one limited in its injurious effects to one or a few individuals." § 6-5-121. The Alabama Supreme Court has held that the state's statutory definition of nuisance is declaratory of the common law and does not supersede it as to the other conditions or circumstances constituting a nuisance under common law. Lauderdale Cnty. Bd. of Educ. v. Alexander, 110 So. 2d 911, 915 (Ala. 1959). While § 6-5-120 "has been liberally interpreted to effect its broadly stated purpose," Tipler, 547 So. 2d at 440, and predicate conduct for the public or private nuisance may be intentional, unintentional, or negligent, id., Alabama courts strictly require nuisance plaintiffs to prove both duty and causation. See also Jackson v. USX Corp., 659 So. 2d 21, 24 (Ala. 1994).

The Alabama Supreme Court has indicated that it analyzes the elements of legal duty and causation in negligence and nuisance actions the same way. For example, it held that when the plaintiff presented sufficient evidence of his negligence claim – including establishing the elements of duty and but-for and proximate causation – to submit that claim to the jury, his nuisance claim should also be submitted to the jury. Hilliard v. City of Huntsville Elec. Util. Bd., 599 So. 2d 1108, 1111-13 (Ala. 1992); see also Radcliff v. Tate & Lyle Sucralose, Inc., No. 06-CIV-0345, 2008 WL 3843446, at *6 (S.D. Ala. Aug. 14, 2008) ("Shortly after issuing its decision in Tipler, the Supreme Court of Alabama clearly implied that the duty and causation analyses in a nuisance claim are conducted the same way as they are in a negligence claim.") (citing Hilliard, 599 So. 2d at 1111-13). Likewise, if the plaintiff fails to present evidence of the defendant's duty sufficient to establish his liability for negligence, that will also preclude the defendant's liability for nuisance. USX Corp., 659 So. 2d at 24. That said, this district has interpreted Alabama nuisance law as requiring a duty that may be either the same as that underlying the negligence claim or some different duty. DCH Health Care Auth. v. Purdue Pharma L.P., No. 19-CIV-0756, 2019 WL 6493932, at *5 (S.D. Ala. Dec. 3, 2019).

This Court has already ruled that Chedester has failed to show that Defendants owed her a duty. (Doc. 77 at 8) ("First, the Chedesters were not in privity with Defendants. Second, Plaintiffs have failed to show that Defendants owed the Chedesters a duty."); see also Keck, 830 So. 2d at 9 ("The lack of privity . . . forecloses such claims because the Kecks were not the initial purchasers of the house. Even if the law of privity were inapplicable . . . the Kecks' negligence claims would nevertheless fail, because the Kecks have failed to prove that the Dryvit defendants owed them a duty."). Nor do Plaintiffs even address the duty issue in their supplemental brief addressing private nuisance in a similar context, (Doc. 80), or proffer new evidence sufficient to establish any duty that would underlie their nuisance claim, DCH Health Care Auth., 2019 WL 6493932, at *5. Because Alabama courts strictly demand that nuisance plaintiffs establish both duty and causation, Tipler, 547 So. 2d at 440; USX Corp., 659 So. 2d at 24, and Plaintiffs have failed to carry their burden under Alabama law, the Court **GRANTS summary judgment for Defendants, entitling Defendants to dismissal of Chedester's private nuisance claim** under Count V of the Second Amended Complaint, (Doc. 83). See Celotex Corp, 477 U.S. at 323 (holding that the moving party is entitled to summary judgment if the nonmovant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof.").

The Defendants argue that because they have no control over the drywall in the Plaintiffs' home, they cannot be held liable for any nuisance it may create. The Court disagrees.

The essence of private nuisance is an interference with the use and enjoyment of one's property. Crouch v. North Alabama Sand & Gravel, LLC, 177 So. 3d 200, 209 (Ala. 2015); Borland v. Sanders Lead Co., 369 So. 2d 523, 529-30 (Ala. 1979). The Alabama Supreme Court has described a private nuisance as

>   any establishment, erected on the premises of one, though for purposes of trade or business, lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another, or produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable . . . is a nuisance. [O]ffensive odors . . . when of such degree or extent as to materially interfere with the ordinary comfort of human existence, will constitute a nuisance.

Baldwin v. McClendon, 288 So. 2d 761, 765 (1974); see also Prosser & Keeton on the Law of Torts, § 87, pp. 619-20, n.11 (5th ed. 1984) (private nuisance may consist of a disturbance by unpleasant owners of the comfort or convenience of an occupier of land).

In a suit more akin to the present case, Park Center Inc. v. Champion Intern. Corp., 804 F.Supp. 294, 296-97 (S.D. Ala. 1992), the Southern District of Alabama considered a suit by a building owner against the seller of lupuna wood paneling that emitted noxious odors in hot weather. The plaintiff owned the building in which the paneling was installed. Id. Considering both § 6-5-120's "broadly stated purpose" and that offensive odors can constitute a private nuisance, the district court denied the defendant's motion for summary judgment as to the nuisance claims. Id. at 302-03 ("It cannot be said that the lupuna wood odors affecting the building in this action under no set of factual circumstances could constitute an interference with Plaintiffs' use and enjoyment of the building."). Notably, the Court did not require that the noxious fumes emanate from a source presently controlled by the Defendants.

Defendants have pointed to courts outside of this jurisdiction that do not permit nuisance claims against product manufacturers because they no longer have control over the product after its sale to third parties. E.g., In re Dicamba Herbicides Litig., 359 F. Supp. 3d 711, 729 (E.D. Mo. 2019); In re Syngenta AG MIR 162 Corn Litig., 131 F. Supp. 3d 1177, 1213-14 (D. Kan. 2015); Traube v. Freund, 775 N.E.2d 212, 216 (Ill. App. Ct. 2002); Johnson County Tennessee v. U.S. Gypsum Co., 580 F. Supp. 284, 294 vacated in part on other grounds  664 F. Supp. 1127 (E.D.

Tenn. 1985); Charles J. Nagy, Jr., American Law of Products Liability § 1:19 (3d ed. 2021). But a review of nuisance case law in Alabama, including the cases discussed above, does not clearly reveal a requirement that the defendant exercise present "control" over the nuisance-causing instrumentality. At this time, the Court will not reconsider its denial of summary judgment for Defendants on the Lees' private nuisance claim under Count V of the Second Amended Complaint, (Doc. 83).

### III. CONCLUSION

For the reasons stated herein, the Court **GRANTS summary judgment for Defendants as to Chedester's breach of implied warranty and private nuisance claims** under Counts IV and V of the Second Amended Complaint, (Doc. 83).

**DONE** and **ORDERED** this the **16th** day of **October 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**